# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Bankruptcy Case 23-80007 |
| Volkan Turan, | ) | |
| | ) | Chapter 13 |
| Debtor. | ) | |
| | ) | Judge Lynch |
| _____ | ) | |
| | ) | |
| Volkan Turan, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Adversary No. 23-96006 |
| Tatyana Rivtis, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION

Creditor Tatyana Rivtis filed a secured claim, No. 2-1, in the Debtor's chapter

13 case, asserting a claim of $99,261.91. She alleges her claim is secured by the real

property the Debtor owns in McHenry County on the basis of a memorandum of

judgment she caused to be recorded in McHenry County, Illinois, on June 21, 2022.

(Def. Resp. ECF No. 32, ¶ 4). The Debtor brings this adversary proceeding to contest

Ms. Rivtis's lien, maintaining that the memorandum of judgment she recorded does

not satisfy Illinois statutory requirements for judgment liens, making her claim

unsecured. Ms. Rivtis opposes his contention, and the parties have filed cross-motions

for summary judgment. (ECF Nos. 7, 11.)

For the reasons set out below, the Creditor's motion for summary judgment will be granted and the Debtor's cross-motion will be denied. Judgment will be entered for Ms. Rivtis finding Claim No. 2-1 satisfied the requirements of ILCS 5/12-101 and the recording of her judgment was effective to create a judicial lien.

## I. JURISDICTION

The Court has subject matter jurisdiction under 28 U.S.C. § 1334(b) and the district court's Internal Operating Procedure 15(a). This matter contesting a creditor's claim is a core proceeding under 28 U.S.C. § 157(b)(2)(J), *see e.g., Spangler v. Byrne (In re Spangler)*, 653 B.R. 573, 581 (Bankr. N.D. Ill. 2023), in which this court has constitutional authority to enter final orders. *See, e.g., Johnson v. S.A.I.L. LLC (In re Johnson)*, 649 B.R. 735, 748 (Bankr. N.D. Ill. 2023) ("Disputed matters that 'stem[] from the bankruptcy itself or would necessarily be resolved in the claims allowance process,' are constitutionally core.") (quoting *Stern v. Marshall*, 564 U.S. 462, 499 (2011)).

## II. PROCEDURAL BACKGROUND AND SUMMARY JUDGMENT STANDARD

The parties fully briefed and argued the matter and submit that the question is ready for disposition on the record now before the Court. The Court finds that the parties have raised no material dispute of fact and that it can now rule as a matter of law based on the proof of claim, the parties' respective motions for summary judgment and the respective statements and memoranda supporting and in opposition to the motions, and upon consideration of the argument of counsel at hearing.

Summary judgment is appropriate "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), made applicable to this bankruptcy proceeding by Fed. R. Bankr. P. 7056. "Whether a factual dispute is genuine turns on whether 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Douglas v. Reeves*, 964 F.3d 643, 645-46 (7th Cir. July 7, 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In making that determination, the court must "construe all facts, and draw all reasonable inferences from those facts, in favor of the nonmoving party," and does not "make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts." *Kurtzhals v. Cty. of Dunn*, 969 F.3d 725, 727 (7th Cir. 2020). These principals "remain unchanged on cross-motions for summary judgment." *Blow v. Bijora, Inc.*, 855 F.3d 793, 797 (7th Cir. 2017). "Each movant has an independent burden to show [there] is no genuine issue of material fact, and he is entitled to judgment as a matter of law." *Spangler v. Byrne (In re Spangler)*, 653 B.R. 573, 577 (Bankr. N.D. Ill. 2023) (citing *Wooten v. Taking Care of Our Seniors, Inc.*, No. 17 C 5570, 2022 U.S. Dist. LEXIS 93758, at *1 (N.D. Ill. May 25, 2022)).

### III. UNDISPUTED MATERIAL FACTS

The material facts come from the parties' statements of fact and responses submitted pursuant to this Court's Local Rules. *See* Bankr. N.D. Ill. R. 7056-1 and 7056-2 (Apr. 19, 2022). No material facts probative to this ruling are in dispute.

In Illinois for real estate of the type at issue here[1] a judgment creates a lien on real estate of the judgment debtor "from the time a transcript, certified copy or memorandum of the judgment is filed in the office of the recorder in the county in which the real estate is located." 735 Ill. Comp. Stat. Ann. 5/12-101. Rather than file a certified copy of the judgment,[2] Ms. Rivtis filed a two-page document with the McHenry County Recorder of Deeds, entitled "Memorandum of Judgment," on June 21, 2022. (Ex. B, ECF No. 1; ECF No. 28, ¶ 7.) The first page of that document is entitled "Judgment Lien" and contains text prepared by Ms. Rivtis's attorney. Because this cover page was not signed by a judge or attested by a court clerk and was not part of any document so signed, for purposes of the judgment lien statute it is largely disregarded. *See, e.g., Spangler v. Byrne (In re Spangler)*, 653 B.R. 573, 581 (Bankr. N.D. Ill. 2023).

The second page bears a notation that it is signed by Judge Sherlock of the Circuit Court of Cook County and certified by the clerk of the Circuit Court of Cook County. The page, entitled "Memorandum of Judgment," appears to be based on a court form with various blanks completed. Its header denotes the form as "3315 Memorandum of Judgment (12/01/20) CCG 0015." This page contains a caption listing the parties, the court and the case number. At the bottom it contains name and contact information for the attorney who prepared and completed the form. Also

---

[1] The parties agree that the properties at issue here are considered "class two" real estate for purposes of section 12-101 of the Illinois Code of Civil Procedure. 735 Ill. Comp. Stat. Ann. 735 ILCS5/12-101.

[2] As will be discussed, there were multiple orders entered in the state court proceeding that contained or affected the judgment or judgments at issue. In the recording that Ms. Rivtis relies upon here, she did not include copies of any of the orders entered in the state court proceeding.

toward the bottom is a signature block for a judge with the text "ENTERED:", "Dated:", and a signature block for "Judge." There is a handwritten signature in the block for "Judge" (which signature is not legible), below which is stamped "Judge Patrick J. Sherlock  JUN – 6 2022 Circuit Court – 1942." Below this is a stamp with language certifying the document by the clerk of court, including a seal of the court.

Of primary interest here is the text in the body of the Memorandum of Judgment. It states in full:

> On ___11/30/20___, judgment was entered in this court in favor of the plaintiff __TATYANA RIVTIS__ and against defendant __VOLKAN TURAN__ whose address is __5 Barrington Bourne, Barrington Hills, IL 60010__ in the amount of $___69,372.76___.

Section 12-101 of the Illinois Code of Civil Procedure defines the term "memorandum" as follows:

> The term "memorandum" as used in this Section means a memorandum or copy of the judgment signed by a judge or a copy attested by the clerk of the court entering it and showing the court in which entered, date, amount, number of the case in which it was entered, name of the party in whose favor and name and last known address of the party against whom entered. If the address of the party against whom the judgment was entered is not known, the memorandum or copy of judgment shall so state.

735 Ill. Comp. Stat. Ann. 5/12-101. The parties dispute the memorandum filed by Ms. Rivtis and recorded by the McHenry County Recorder correctly "show[s]" the "date" and "amount" of "the judgment" by stating a "judgment was entered" on "11/30/20" in the "amount of $69,372.76." For it is undisputed that there were three separate orders entered in the state court proceeding on separate dates respecting the judgment.

The first order, entitled "ORDER", was signed and entered by Judge Sherlock on October 26, 2020. (Ex. B, ECF No. 1; ECF No. 9.) It states that after trial:

IT IS HEREBY ORDERED:

1) Judgment is entered on Count 2 in favor of Plaintiff Tatyana Rivtis and against Defendant Volkan Turan in the amount of $50,000.00, plus $6,041.67 for the 5% default interest, plus attorney fees as provided for by the Note.

2) Judgment is entered on Count 3 in favor of Plaintiff Tatyana Rivtis and against Defendant Mint Remodeling Corporation in the amount of $50,000.00, plus $6,041.61 for the 5% default interest, plus attorney fees as provided for by the Note.

3) Defendants Mint Remodeling Corporation & Volkan Toran are jointly and severally liable for this amount, $50,000.00, plus $6,041.61 for the 5% default interest, plus attorney fees as provided for by the Note. The Court finds that the repayment of the $50,000.00 was not contingent on the property being sold.

4) The Court having accepted the submission of Plaintiff for $14,131.15 in Attorney Fees for work prior to 9/11/20 plus trial fees, and Defendants' Counsel having objected to the fee petition, Defendants are given 10 days (until and including 11/5/20) to file a Response to the attorney fees, and Plaintiff shall have five days thereafter to file a Reply in support thereof (until and including 11/5/20). Hearing on the matter is set for 11/24/20 at 9:30 AM in courtroom 2007, to be held virtually by Zoom at the aforementioned Meeting ID and Passcode.

Next, on November 30, 2020, Judge Sherlock signed and entered a second order, also entitled "ORDER," which states that after evidentiary hearing on Ms. Rivtis's attorney fee petition:

IT IS HEREBY ORDERED:

The Court has considered the application for attorney fees in light of his own knowledge and experience to assess the time required to complete particular activities, the itemization and detailed descriptions of all the work and made deductions for work relating the mechanic's lien issues and in light of those considerations, the

Court awards Plaintiff $13,331.15 for her attorney fees and legal costs, inclusive.

(Ex. C, ECF No. 1; ECF No. 10.) Finally, sua sponte and not based on request by any party, Judge Sherlock entered a third order on January 14, 2021, also entitled "ORDER." The third order states in its entirety:

> This order comes from the Court, *sua sponte*, upon further review of the Verified Second Amended Complaint. It is ordered that the judgment against Mint Remodeling Corp. is hereby vacated.
>
> The Verified Second Amended Complaint contains two surviving counts (Count I was withdrawn and Counts IV and V were previously dismissed by order of this Court). Count II seeks recovery from Vulkan Turan for his involvement guaranteeing the promissory note or otherwise being primarily responsible for the promissory note by reason of his failure to execute it in his corporate capacity. Count III seeks to recover, only in the alternative to Count II, from Mint Remodeling Corp. Since the Court has found in favor of plaintiff under Count II, the Court does not believe on further reflection that it can enter judgment on Count III against the Corporation.
>
> For that reason, the court vacates the judgment entered against Mint Remodeling Corp.

(Ex. 1, ECF No. 9; ECF No. 32, ¶ 12.)

## IV. DISCUSSION

The Creditor maintains that her Memorandum of Judgment correctly shows the date and amount of the judgment because the damages and fees were components of the same judgment that did not become final until both orders were entered. She argues that the subsequent order vacating judgment solely with respect to a co-defendant on a separate count did not affect the finality or date of the judgment against the Debtor. Ms. Rivtis further argues that any ambiguity was cured by the more detailed description in the recorded cover page prepared by the attorney. The

Debtor argues in the alternative either (1) that the Memorandum of Judgment needed to show the date of January 14, 2021, as date of judgment, contending that the ultimate judgment was not final until then or (2) that it was improper for the description in the document to combine the amount and date of the separate damages and fee judgments.  As to the latter point, he asserts it would be impossible to match up the description in the memorandum to a specific judgment or order entered in the state court docket.

Section 12-101 of the Illinois Code of Civil Procedure governs the creation of a judicial lien.  The statute provides that "a judgment is a lien on the real estate of the person against whom it is entered in any county in this State, including the county in which it is entered, only from the time a transcript, certified copy or memorandum of the judgment is filed in the office of the recorder in the county in which the real estate is located." 735 Ill. Comp. Stat. Ann. 5/12-101.  Illinois courts have recognized that "[a] judgment lien, as provided in section 12-101, is a statutory creation in derogation of the common law. . . . Thus, the case law overwhelmingly indicates that, 'since the creation and revival of a judgment lien are statutory in nature, courts require strict compliance with section 12-101.'" *Blewitt v. Urban*, 2020 IL App (3d) 180722, ¶38 (Ill. App. Ct., 3rd Dist., 2020).

In *In re Marriage of King*, the Illinois Supreme Court found an additional implied requirement, holding that to "create a valid lien on real estate, a judgment must be final, valid and for a definite amount of money." 208 Ill. 2d 332, 347 (Ill. 2003). *See also Anastos v. M. J. D. M. Truck Rentals, Inc.*, 521 F.2d 1301, 1304 (7th Cir. 1975) (no judgment lien can arise until judgment is "both executable and final").

The Court found that a grant of attorneys' fees in a marital dissolution case was not final until the judgment of dissolution of marriage, and that because the memorandum of judgment was "based on"[3] the earlier fee award rather than the later judgment of dissolution, it was ineffective to create a lien even though not recorded until after the dissolution judgment was entered. *Id.* at 347.

While the Court in *King* made multiple references to the requirement of "finality" it also placed much emphasis on the fact that the later judgment of dissolution of marriage could – and did – modify the earlier fee award. The judgment of dissolution of marriage specifically stated the amount of attorney's fees awarded. Although the amount of the monetary judgment did not change, the Court found it materially modified the earlier order. While the initial fee order had limited the source of payment to a single specified bank account, the judgment of dissolution authorized and required payment from any of Mr. King's assets. The Court concluded that "since the January 5, 1999, order was modified by the February 5, 1999, judgment of dissolution, it is the latter judgment that constituted the final judgment as to the attorney fees owed by [Mr. King] to the Muller firm." 208 Ill. 2d at 346. The Court also emphasized that "orders entered during the course of a dissolution proceeding are expressly modifiable before final judgment and such orders terminate when final judgment is entered." 208 Ill. 2d at 345.

---

[3] The Supreme Court describes the recorded document as a "memorandum of judgment ... which was based upon the January 5, 1999, order" awarding fees. 208 Ill. 2d at 347. The appellate court's decision suggests that the document might have been a copy of the order. 336 Ill. App. 3d 83, 85 (Ill. App. Ct. 2002).  In any event, neither court discusses or applies the statutory requirements for a "memorandum."

Here, too, the Court finds based on the undisputed facts that the October 26, 2020, judgment of $50,000 in damages and $6,041.67 in interest was sufficiently connected to the issue of fees that it did not become final until and was modified by the November 30, 2020, order awarding $13,331.15 in attorney's fees. An application for attorney's fees will not always make a judgment of damages non-final, nor will a later award of attorney's fees always be deemed to have modified an earlier judgment of damages. *King's* conclusion by its own terms "turn[ed] on interpretation of section 508(c) of the Marriage and Dissolution of Marriage Act," which had been recently amended to provide that a "pending but undetermined Petition for Setting Final Fees and Costs shall not affect appealability of any judgment or other adjudication in the original proceeding." 208 Ill. 2d at 340-42.

The Illinois Supreme Court has held that a "judgment is final if it determines the litigation on the merits so that, if affirmed, nothing remains for the trial court to do but to proceed with its execution." *Big Sky Excavating, Inc. v. Ill. Bell Tel. Co.*, 217 Ill. 2d 221, 233 (Ill. 2005). But unresolved matters that "are merely incidental to the ultimate rights that have been adjudicated by the judgment" will not prevent finality of the judgment. *In re D.D.*, 212 Ill. 2d 410, 418 (Ill. 2004) (citing *Deckard v. Joiner*, 44 Ill. 2d 412, 417 (Ill. 1970)). In "determining whether an order that does not resolve a claim for fees constitutes a final, appealable order, courts have made a distinction between a claim for fees brought as part of the principal action and a claim made after the principal action has been decided." *Phx. Bond & Indem. Co. v. Caddis on the Fly, Inc. (In re Cty. Treasurer)*, 2022 IL App (1st) 210154-U, ¶ 21 (Ill. App. Ct. 2022) (quoting *Goral v. Kulys*, 2014 IL App (1st) 133236, ¶ 22 (quoting *In re Estate of*

*Kunsch*, 342 Ill. App. 3d 552, 556 (Ill. App. Ct. 2003))).[4] In particular, where there is a pending fee application, "any other judgment entered in the case before the claim for fees is ruled upon is or becomes nonfinal and nonappealable when the claim for fees is made, unless the prior judgment contains the language set forth in Supreme Court Rule 304(a), that there is no just reason to delay enforcement or appeal." *F.H. Prince & Co. v. Towers Fin. Corp.*, 266 Ill. App. 3d 977, 984 (Ill. App. Ct. 1994); *Law Offices of Brendan R. Appel, LLC v. Georgia's Rest. & Pancake House*, 2021 IL App (1st) 192523, ¶ 68 (Ill. App. Ct. 2021).

In this case, the October 26, 2020 Order specifically continued the matter for hearing on attorney's fees. The fee request was therefore made before the judgment on damages was entered and that request was still pending at the time that judgment was entered. The October 26, 2020 Order contains no finding pursuant to Illinois Supreme Court Rule 304(a). Additionally, as noted by the appellate court in ultimately affirming the award of fees, "the record clearly shows that [Ms. Rivtis] sought attorney fees in her complaint and the trial court allowed her to submit invoices from her counsel at trial." *Rivtis v. Woma, Inc.*, 2022 IL App (1st) 210147-U,

---

[4] *In In re Rosebud Farm, Inc.*, the bankruptcy court held that recording a judgment for damages did not create a lien under section 5/12-101 for subsequently awarded attorneys' fees, but the case is readily distinguishable in a number of material respects. 619 B.R. 202 (Bankr. N.D. Ill. 2020), *aff'd in part remanded in part by Longo v. Rosebud Farm, Inc.*, 638 B.R. 600, 603 (N.D. Ill. 2022). First, it involved a federal judgment awarded pursuant to the federal Civil Rights Act. Second, the recorded judgment of damages was in favor of and recorded by the plaintiff and yet it was the plaintiff's attorney, individually, who asserted a lien for his fees in the defendant's bankruptcy proceeding. Notably both courts seemed to assume that the recording was effective to create a lien with respect to the underlying damages award to the plaintiff. Finally, the fee award was granted more than a year after the damages judgment was entered and recorded by the plaintiff, and only after the damages judgment was affirmed on appeal. The federal courts' opinions suggest that the attorney's fee petition was not pending at the time the damages judgment was entered and that the later fee award did not purport to modify the earlier judgment in any way.

¶ 45 (Ill. App. Ct. Mar. 31, 2022) (Ill App. Ct. 1st Dist. 2022) (hereinafter the "1st District Case"), *pet. for leave to appeal denied by* 459 Ill. Dec. 182 (Ill. 2022). While the October order states that Ms. Rivtis sought $14,131.15 in attorney's fees, the amount actually awarded by the November order was different, in the amount of $13,331.15. The total definite amount of the judgment was therefore not established until November 30, 2020. Accordingly, the record is clear that the award of damages did not become final until the fee request was adjudicated by the November 30, 2020 Order. It was not inaccurate, therefore, for the memorandum of judgment to include the damages award as part of the judgment entered on November 30, 2020.

The Debtor argues that the judgment did not become final until entry of the January 14, 2021 Order which vacated the judgment against Mint Remodeling Corp. But that order left undisturbed and did not modify either the damages or attorney's fee awards previously entered against the Debtor in favor of Ms. Rivtis. The Debtor relies principally on an appellate court decision rejecting Ms. Rivtis' earlier attempt to obtain and enforce a judicial lien. On November 30, 2020, she recorded with the McHenry County Recorder a memorandum of judgment prepared and only signed by her attorney, and attaching uncertified copies of the October and November 2020 orders. In a McHenry County foreclosure proceeding, the trial court found the November 30, 2020 recording to be ineffective to create a lien, and the court of appeals affirmed. *Rivtis v. Turan*, 2022 IL App (2d) 210489 (Ill. App. Ct. 2022) (hereinafter, the "2nd District Case"). The principal basis for the ruling was that the November 30, 2020 recording failed to satisfy the statutory definition of "memorandum of

judgment" in that the orders did not list the defendant's address and the 'memorandum' which included that information was not signed by a judge. 2022 IL App (2d) 210489, ¶ 25 ("The fact that the Judgment Lien was not 'signed by a judge' is fatal here.").

The appellate court in the 2nd District Case did suggest that the January 14, 2021 order affected the finality of the earlier judgments, calling this "lack of finality … yet another proverbial fly in the ointment to plaintiff's claim that the documents attached to her foreclosure complaint constitute a memorandum to create a judgment lien." 2022 IL App (2d) 210489, ¶ 29.   That court also suggested that the January 2021 order "modified the November 30, 2020, order" in that while Mr. Turan and Mint had previously been jointly liable for the debt, the "January 14, 2021, order, however, made defendant solely liable for that debt." 2022 IL App (2d) 210489, ¶ 31.

The January order certainly modified the judgment against Mint, Inc.  But the 2nd District Case opinion offers little discussion or authority for its conclusion that the January order also modified or affected the finality of the judgment against Mr. Turan.  Under an old common law rule known as the "unit-judgment rule" a judgment against multiple defendants was to be treated as a single judgment such that "that if a judgment entered as a unit against two or more defendants is so defective as to necessitate its vacation as to one defendant, it must be set aside as to all." *Chmielewski v. Marich*, 2 Ill. 2d 568, 574 (Ill. 1954) (quoting *Fredrich v. Wolf,* 383 Ill. 638, 641 (Ill. 1943)).  But in *Chmielewski,* the Illinois Supreme Court found the common law rule was abrogated by the Civil Practice Act. The Court held that "when a judgment or decree against two or more defendants is vacated as to one of them, it

need not for that reason alone be vacated as to any of the others, and should not be vacated as to any of the others unless it appears that because of an interdependence of the rights of the defendants or because of other special factors it would be prejudicial and inequitable to leave the judgment standing against them." 2 Ill. 2d at 576. *Chmielewski*'s ruling remains "a correct statement of the rule as it exists today." *Carolina Cas. Ins. Co. v. Estate of Sperl*, 2015 IL App (3d) 130294, ¶ 20 (Ill. App. Ct. 2015). *See also, e.g., Downs v. Rosenthal*, 2013 IL App (1st) 121406 (Ill. App. Ct. 2013); *Primus v. McKenna*, 2015 IL App (1st) 133713-U, ¶ 52 (Ill. App. Ct. 2015).

Typically the unit-judgment principal is still applied where vacatur of one judgment would destroy the foundation of the other. *See, e.g., Carolina Cas. Ins.*, 2015 IL App (3d) 130294, ¶ 1 (finding it would be "prejudicial and inequitable" not to also vacate judgment in personal injury case against driver while granting post-judgment motion of joint defendant company with derivative *repondeat superior* liability where vacatur was based on finding that damages were not proven at trial). But here, by contrast, the record is clear that the judgment against Mint was vacated not due to a foundational flaw to the entry of a judgment against the Debtor but rather *because* of the judgment entered against the Debtor. The January 2021 order explains that since the claim against Mint was in the alternative, it was inappropriate to enter judgment against both defendants. Vacating judgment against the Debtor would destroy the sole reason for vacating judgment against Mint, not the reverse.

Indeed, on appeal of the judgment the appellate court so concluded, rejecting Mr. Turan's argument that "the circuit court's January 14, 2021 order vacating the judgment against Mint rendered the judgment against him logically and legally

inconsistent." 1st District Case, 2022 IL App (1st) 210147-U, ¶ 43.  The appellate court found there to be separate and "differing judgments against Turan and Mint." *Id.* at ¶41. Such "differing" judgments "did not result from the merits of the case or any factual or implied findings," but rather "resulted from how the separate counts against each defendant were pled." *Id.* The trial court "vacated the count against Mint because that count was expressly pled in the alternative to the count against Turan." *Id.* The appellate court emphasized, however, that the trial court "never found that Mint was not bound by the note and did not reverse its prior finding that Turan and Mint were jointly and severally liable." *Id.*  It further emphasized that "the trial court's vacatur of the judgment against Mint merely removed the judgment. It did not negate the trial evidence that showed Mint was bound by and liable on the note." *Id.* at ¶42. The appellate court therefore found that "the circuit court's vacatur of the judgment against Mint had no effect upon the judgment against Turan." *Id.*[5]

Thus, the vacatur of the judgment against the co-defendant Mint did not render the memorandum of judgment inaccurate.  The memorandum describes the Debtor as the only defendant. The judgment was final as of the time of the recording,

---

[5] Language in the 2nd District Case opinion suggesting, contrary to the 1st District Case opinion, that the January order modified or replaced the November or October judgment orders *as to the Debtor* was not necessary to the Second District's conclusion that the earlier memorandum of judgment at issue in the case was ineffective due to the lack of a judge's signature.  Since the Second District's finding may have been based upon the abrogated "unit-judgment rule" and because its discussion of the January order was cursory, this Court finds the First District's conclusion more persuasive on the point. *See, e.g., Herzog v. Lexington Twp.*, 167 Ill. 2d 288, 297 (Ill. 1995) ("Where a judgment ... is based on determinations of two issues, either of which standing independently would be sufficient to support the result, the judgment is not conclusive with respect to either issue standing alone.") (citing Restatement (Second) of Judgments § 27, Comment i, at 259 (1982)). *See also, e.g., Talarico v. Dunlap*, 177 Ill. 2d 185, 191 (Ill. 1997) (for "collateral estoppel to apply, a decision on the issue must have been necessary for the judgment").

and the signed memorandum recorded then met the requirements of section 12-101. The Court accordingly finds that there is no genuine issue of material fact and that based on the undisputed facts Ms. Rivtis's Memorandum of Judgment satisfied section 5/12-101 and was, therefore, effective to create a judicial lien.

## V. CONCLUSION

For all the reasons stated above, the Defendant's motion for summary judgment is granted and the Plaintff / Debtor's motion for summary judgment is denied. Summary judgment will be granted in favor of the Defendant, finding that the Memorandum of Judgment she recorded on or about June 21, 2022, with the McHenry County Recorder was effective to create a lien securing the judgment by the Debtor's non-exempt real property located in that county.

A separate order and judgment will be issued concurrent with this Memorandum Opinion giving effect to the determinations reached herein.

DATE: March 29, 2024

ENTER

Thomas M. Lynch
United States Bankruptcy Judge